**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-2418-WJM-KMT

MINERA SAN CRISTOBAL, S.A., and
SUMITOMO CORPORATION,

      Petitioners,

v.

WASHINGTON GROUP BOLIVIA S.R.L.,
URS ENERGY & CONSTRUCTION, INC., f/k/a WASHINGTON GROUP INTERNATIONAL,
INC.,

      Respondents.

---

**ORDER GRANTING PETITION TO CONFIRM ARBITRATION AWARD AND
DENYING MOTION TO PARTIALLY VACATE ARBITRATION AWARD**

---

Petitioners Minera San Cristóbal, S.A. and Sumitomo Corporation (together

"Petitioners") bring this action against Respondents Washington Group Bolivia S.R.L. and

URS Energy and Construction, Inc., formerly known as Washington Group International, Inc.

(together "Respondents"), seeking to confirm an arbitration award. Before the Court are

Petitioners' Petition to Confirm Arbitration Award ("Petition") (ECF No. 1) and

Respondents' Cross-Motion to Partially Vacate Arbitration Award ("Cross-Motion") (ECF

No. 25).  For the reasons set forth below, the Petition is granted and the Cross-Motion is

denied.  The August 9, 2013 arbitration award of the International Chamber of Commerce

("ICC") International Court of Arbitration is affirmed.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Minera San Cristóbal, S.A. ("MSC"), a subsidiary of Sumitomo Corporation, owns the development and mining rights to the San Cristóbal Mine located in Bolivia.  (ECF No. 1 at 2.)  Beginning in 2005, MSC entered into a series of agreements with Washington Group Bolivia, S.R.L. ("WGB") to provide mining services for the Mine, including the 2005 Open Pit Mining Services Agreement (the "MSA") and the 2006 Engineering, Procurement and Construction Agreement (the "EPC").  (*Id.*)  URS Energy and Construction ("URS"), a parent company of WGB, entered into a guaranty of WGB's obligations under the MSA and EPC agreements.  (*Id.*)  All of the agreements, including the MSA, the EPC, and the Guaranty, include a provision that any disputes involving interpretation or application of the agreements would be finally resolved through binding international arbitration under the ICC Rules of Arbitration.  (ECF Nos. 3-3 § 18.5; 3-4 § 18.5; 3-6 ¶ 10.)  The agreements provide that they be governed and interpreted in accordance with New York law.  (ECF Nos. 3-3 § 21.1; 3-4 § 21.1; 3-6 ¶ 9.)  The MSA also contains provisions permitting termination of the agreement for convenience or for default.  (ECF No. 3-3 § 17.1 & 17.2.)

On October 15, 2008, after disputes arose, the parties entered into an agreement modifying parts of the MSA ("2008 Agreement").  (ECF No. 25 at 6.)  However, when disputes persisted, in 2009 MSC elected to terminate WGB's services for convenience.  (*Id.* at 7; ECF No. 1 at 2.)  In 2011, Petitioners initiated arbitration proceedings against Respondents, alleging breach of contract and related claims.  (ECF No. 1 at 3.)  Respondents asserted a counterclaim for wrongful termination.  (*Id.*)

In December 2012, the parties held an arbitration administered by the ICC

International Court of Arbitration before a panel of three arbitrators: Gerald Aksen, Patrick

J. Garver, and A.H. Gaede, Jr. (collectively the "Tribunal").  (ECF No. 3-2 ("Award") at 2.)

Petitioners argued, among other things, that Respondents violated the MSA by performing

deficiently, causing damages in the form of cost overruns and production shortfalls.  (*Id*. at

8.)  Respondents asserted a counterclaim contending that Petitioners were barred from

seeking damages for default because Petitioners terminated WGB for convenience, and

that Petitioners' action was in fact a termination for default, which termination was wrongful.

(*Id*. at 12, 65-66.)

In a 69-page Final Award, the Tribunal evaluated in detail each claim made by both

sides.  (*See* Award at 14-67.)  With respect to Petitioners' claim that WGB had breached

the MSA, the Tribunal found Respondents liable for production shortfalls and cost overruns

occurring on or after October 15, 2008, the date of the 2008 Agreement.  (Award at 48.)

The Tribunal also awarded Petitioners credits for improper charges under the MSA, and a

fraction of Petitioners' other damages claims, but rejected the remainder of Petitioners'

claims, and rejected Respondents' counterclaims in their entirety.  (*Id*. at 65-67.)

Ultimately, the Tribunal awarded Petitioners $8,739,338.00 for breach of contract

damages under the MSA post October 15, 2008 (the "$8.7M Award"), and $1,633,919.96

in damages from other sources, for a total award of $10,373,257.96.  (*Id*. at 67-68.)  Of

this amount, the Tribunal ordered that $741,600.96, plus any interest earned in escrow, be

released to Petitioners from Respondents' escrow account; that the $8.7M Award and an

award of $123,231.00 be paid without interest; and that the remaining $769,088.00 be

3

paid with simple interest at a rate of 9% per annum from June 9, 2011 until the date of the Award.  (*Id.* at 68.)  One of the three members of the Tribunal, A.H. Gaede, Jr., dissented from the part of the decision granting Petitioners the $8.7M Award, noting that "in my opinion the amount awarded is not consistent with or properly based upon the evidence in the record and the applicable law."  (*Id.* at 69.)

On September 5, 2013, Petitioners filed the Petition requesting confirmation of the Award in its entirety.  (ECF No. 1.)  Respondents filed a Response (ECF No. 32) and Petitioners a Reply (ECF No. 43).  On October 1, 2013, Respondents filed their Cross-Motion requesting vacatur of the $8.7M Award, and a Motion to Stay Confirmation of the Arbitration Award Pending Resolution of the Cross-Motion.  (ECF Nos. 30 & 31.) Petitioners filed Responses opposing both the Cross-Motion (ECF No. 44) and the Motion to Stay (ECF No. 38), and Respondents filed Replies (ECF Nos. 39 & 52).  All three motions are now ripe for resolution.  As the instant Order resolves both the Petition and the Cross-Motion, Respondents' Motion to Stay is now moot.

## II.  ANALYSIS

Petitioners ask the Court to confirm the Tribunal's Award.  (ECF No. 1.) Respondents' Cross-Motion requests that the $8.7M Award be vacated, but does not dispute that the remainder of the Award should be confirmed.  (ECF No. 25 at 1-4.)  Thus, the only issue before the Court is whether the $8.7M Award should be vacated or confirmed.

The standard of review of arbitral awards is among the narrowest in the law.  *See Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7*, 886 F.2d

275, 276 (10th Cir. 1989); *see also Int'l Bhd. of Elec. Workers, Local Union No. 611,*

*AFL-CIO v. Pub. Serv. Co. of N.M.*, 980 F.2d 616, 618 (10th Cir. 1992).  The arbitrator's

decision will be enforced if it draws its essence from the parties' agreements and is not

merely the arbitrator's own brand of industrial justice.  *United Steelworkers of Am. v. Enter.*

*Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).  Courts may not reconsider the merits of

an award even where the award may rest on errors of fact or misinterpretations of the

parties' agreement.  *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S.

29, 36 (1987); *Cal-Circuit ABCO, Inc. v. Solbourne Computer, Inc.*, 848 F. Supp. 1506,

1510 (D. Colo. 1994).  As a result, "as long as the arbitrator is even arguably construing or

applying the contract and acting within the scope of his authority, that a court is convinced

he committed serious error does not suffice to overturn his decision."  *Misco*, 484 U.S. at

38.

Confirmation of a commercial arbitration award involving international parties is

generally governed by the Federal Arbitration Act ("FAA"), which requires that "[t]he court

shall confirm the award unless it finds one of the grounds for refusal or deferral of

recognition or enforcement of the award . . . ."  9 U.S.C. § 207.  However, the applicable

contracts here provide that the binding decision of the arbitral tribunal is "reviewable only in

accordance with the provisions of the Uniform Arbitration Act, as adopted by the State of

Colorado."  (ECF Nos. 3-3 § 18.5(f); 3-4 § 18.5(f); 3-5 § 5.1; 3-6 ¶ 10.)  Accordingly, the

Court's review for purposes of considering partial vacatur is governed by the Colorado

Uniform Arbitration Act ("CUAA").  Colo. Rev. Stat. § 13-22-201, *et seq.*

As under the FAA, the CUAA provides that upon motion for confirmation of an arbitration award, the presiding court shall issue a confirming order unless the award is modified, corrected, or vacated.  *Id.* § 13-22-222(1).  Under the CUAA, vacatur is limited to five exclusive grounds, one of which is where the "arbitrator exceeded the arbitrator's powers".  *Id.* § 13-22-223(d).  Colorado courts have interpreted this provision such that "an arbitrator can exceed such power only when the award goes beyond the scope of the arbitration agreement."  *Coors Brewing Co. v. Cabo*, 114 P.3d 60, 64 (Colo. Ct. App. 2004).  Thus, even where an arbitrator misinterprets the law or the contract at issue, "[t]o say that an arbitrator who manifestly disregards the law exceeds his authority is not consistent with this provision [of the CUAA]."  *Id.*

Respondents contend that the Tribunal's decisions exceeded its authority because it refused to apply controlling New York case law.  (ECF No. 25 at 14-24.)  Specifically, Respondents argue that the Tribunal ignored five requirements under New York law:  (1) the MSA obligated Petitioners to provide a notice and opportunity to cure prior to termination, and New York law requires that parties follow contractual procedures "to the letter" in order to terminate a contractor; (2) New York law prohibits an award of default damages when a contractor is terminated for convenience; (3) to find damages for a cost overrun in this type of contract, New York law requires proof that the costs were in reckless disregard of the obligations of reasonableness and good faith; (4) New York law requires proof of causation and damages and prohibits the "total cost" damage model; and (5) the 2008 Agreement waived all damages for cost overruns and production shortfalls in the entire year of 2008, and New York law prohibits recovering damages on a waived claim.

6

(*Id.* at 12-25.)  In response, Petitioners contend that each of these arguments seeks to relitigate the merits of the Award and, due to the narrow standard of review, none of Respondents' arguments can be considered.  (ECF No. 41 at 5-15.)

In support of the contention that the Tribunal's alleged legal errors all constitute an excess of authority, Respondents cite Colorado precedent holding that "an arbitrator exceeds his authority when he 'refuses to apply or ignores the legal standard agreed upon by the parties for resolution of the dispute.'"  *Coors Brewing*, 114 P.3d at 64 (quoting *Giraldi v. Morell*, 892 P.2d 422, 424 (Colo. App. 1994)) (brackets omitted).  However, Respondents fail to note the *Coors Brewing* Court's subsequent statements, clarifying that "*Giraldi* does not posit that an arbitrator's misapplication of the law constitutes an excess of authority.  Rather, *Giraldi* states that an arbitrators refusal to apply the *agreed upon legal standard* constitutes an excess of authority."  *Id.* (emphasis in original).

It is undisputed that the Tribunal purported to apply New York law—the "agreed upon legal standard" for the purposes of these contracts.  Respondents' argument, in essence, asserts that the Tribunal misapplied or misinterpreted that law, which is not a basis to vacate an arbitration award under the CUAA.

The Court has reviewed the Award and the Tribunal's analysis of each of the issues to which Respondents assign error.  The Award discusses each of the five arguments Respondents make here, as the same arguments were raised before the Tribunal, and explicitly references the provisions of the applicable contracts and the New York case law that Respondents cited.  (*See, e.g.*, Award at 16-17; 27-48.)  Thus, even if the Court were

to agree with Respondents and the dissenting arbitrator that in granting the $8.7M Award, the majority members of the Tribunal misinterpreted the evidence and the governing New York law, the Court could not, consistent with either the FAA or the CUAA, vacate the Award. *See Coors Brewing*, 114 P.3d at 64 (permitting vacatur for a refusal to apply the appropriate legal standard, but not for a manifest disregard or misapplication of the law); *see also Misco*, 484 U.S. at 36. Under the highly deferential standard that applies to the Court's review of an arbitration award, the Court cannot say that the Tribunal's decision with respect to the $8.7M Award should be vacated. Accordingly, the Cross-Motion to partially vacate the Award is denied.

Finally, Petitioners request that the Tribunal's Award be augmented with prejudgment interest at a rate of 9% per annum from the date of the Award until the date judgment is entered. (ECF Nos. 1 at 7; 3-1 at 10-11.) Pursuant to the New York Civil Practice Law and Rules, interest may be recovered from the date of the decision to the date of entry of final judgment at a rate of 9% per annum unless otherwise provided by statute. N.Y. C.P.L.R. §§ 5002, 5004. Respondents do not contest this interest calculation. (ECF No. 27.) Accordingly, the Court finds that, in addition to the sums awarded by the Tribunal, Petitioners are entitled to simple interest on all portions of the Award at a rate of 9% per annum from August 9, 2013, up to and including the date of the entry of judgment.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Petitioners' Petition to Confirm Arbitration Award (ECF No. 1) is GRANTED;

2.  Respondents' Cross-Motion to Partially Vacate Arbitration Award (ECF No. 25) is DENIED;

3.  Respondents' Motion to Stay Confirmation of Arbitration Award Pending Resolution of the Cross-Motion to Partially Vacate (ECF No. 26) is DENIED AS MOOT;

4.  The Tribunal's August 9, 2013 Arbitration Award (ECF No. 3-2) is CONFIRMED in its entirety;

5.  The Clerk shall enter judgment in favor of Petitioners as specified in the Award, with the addition of simple interest at 9% per annum from the date of the Award up to and including the date of entry of judgment, as follows:

    a.  Respondents shall pay to Petitioners the sums of $8,739,338.00 and $123,231.00 with simple interest at 9% per annum ($2,185.29 per diem) from August 9, 2013 to the date of entry of judgment;

    b.  Respondents shall pay to Petitioners the sums of $570,268.00, $179,000.00, and $19,820.00 with simple interest at 9% per annum ($189.64 per diem) from June 9, 2011 to the date of entry of judgment;

    c.  The sum of $741,600.69 plus escrow interest shall be released to Petitioners from Respondents' Escrow Account, with the remaining balance of the Escrow Account to be returned to Respondents;

9

d.      Post-judgment interest shall accrue at the applicable federal rate; and

6.    Petitioners shall be awarded their costs incurred in this action.


Dated this 31st day of January, 2014.

BY THE COURT:

_____

William J. Martínez
United States District Judge